**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1557-WJM-NRN

JAMIE TORTICE,

    Plaintiff,

v.

LOGAN COUNTY, COLORADO,[1] and
DEPUTY KYLE TAYLOR,

    Defendants.

---

**ORDER GRANTING DEFENDANT LOGAN COUNTY BOARD OF COMMISSIONERS' MOTION TO DISMISS**

---

Before the Court is Defendant Logan County Board of Commissioners' (the Board") Motion to Dismiss ("Motion"). (ECF No. 15.) For the following reasons, the Motion is granted.

## I. BACKGROUND[2]

On February 1, 2019, Defendant Kyle Taylor, a deputy with the Logan County Sheriff's Office, was dispatched to Peetz High School in Peetz, Colorado to investigate

---

[1] The parties have unnecessarily overcomplicated the naming of the appropriate governmental entity defendant in this case. (*See, e.g.*, ECF No. 1 at 1 n.1; ECF No. 15 at 1–2; ECF No. 23 at 1 n.1.) For the purposes of this Order, the Court will refer to the entity defendant in this case as the Logan County Board of Commissioners. However, the Court directs Plaintiff to substitute the appropriate party as soon as is practicable, as the parties apparently agreed upon in the briefing.

[2] The Background is drawn from the Complaint. (ECF No. 1.) The Court assumes the allegations contained in the Complaint to be true for the purpose of deciding the Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Citations to (¶ __), without more, are references to the Complaint. (ECF No. 1.)

a report of possible child abuse.  (¶ 11.)  At the high school, Taylor met with Plaintiff Jamie Tortice's four young children and their cousin.  (¶ 13.)  Taylor learned that Tortice's boyfriend attempted to punch her.  (*Id.*)  Although he had no warrant or reason to believe Tortice had committed a crime, Taylor drove to Tortice's home.  (¶ 18.)  Upon arrival, the house was dark except for a small light, and no cars were in the driveway.  (¶ 19.)  Taylor knocked on the front door and received no response, so he walked to the back of the home and into the yard and saw Tortice on the back porch.  (¶¶ 22, 24.)  He approached her and asked who she was and "what's going on tonight?"  (¶ 24.)

Tortice retreated into her home, and Taylor followed her into the house without Tortice's permission, a search warrant, or exigent circumstances.  (¶¶ 25, 27, 28.)  Tortice told Taylor, "You can't come in," and "I'm not letting you in."  (¶ 26.)  Tortice repeatedly objected to Taylor's presence in her home.  (¶ 29.)  Taylor shined a flashlight in Tortice's face.  (¶ 31.)  Tortice repeatedly told Taylor to get out of her house, and after she told him to leave six times, Taylor told Tortice to put her hands behind her back.  (¶ 32.)

Tortice retreated into the kitchen as Taylor screamed at her and shined his flashlight in her face.  (¶ 33.)  Tortice insisted that her constitutional rights be respected, and Taylor "responded by escalating the situation further and training his Taser on Ms. Tortice."  (¶ 34.)  Panicked, Tortice picked up a sugar shaker, trying to cause Taylor to stop terrorizing her.  (¶ 37.)  Taylor screamed at Tortice to "drop the weapon," though Tortice insisted there was no weapon and that it was only a shaker.  (¶ 38.)

During this entire episode, Tortice continued to object to Taylor's presence in her home and criticized him and his conduct.  (¶ 42.)  Taylor then tased Tortice in the chest.

2

(¶ 43.)  Tortice fell to the floor "in excruciating pain," and Taylor continued to scream at her to lay on her stomach.  (¶ 44.)  He trained his firearm on her and threatened to shoot her.  (¶ 45.)  As Taylor threatened to shoot her, Tortice made no movements or threatening gestures.  (¶ 46.)  Taylor trained his gun on Tortice for five minutes while she yelled for help more than 55 times.  (¶ 47.)

Eventually, Deputy John Dodson arrived on the scene, and he handcuffed Tortice.  (¶¶ 48–49.)  Taylor searched Tortice's home.  (¶ 50.)  Taylor charged Tortice with resisting arrest, assault on a peace officer, obstructing a peace officer, menacing, and child abuse.  (¶ 56.)  All charges against Tortice were later dropped, due at least in part to "valid suppression issues inherent in the case."  (¶ 58.)  Taylor claimed that Tortice threw a knife at him and filed charges against her based on this assertion, but the charges relating to the allegation were also dropped.  (ECF No. 1 at 7 n.2.)  Taylor was not disciplined for his actions, nor was he informed by Sheriff Department Command Staff that his conduct fell outside of approved departmental custom or practice.  (¶ 62.)

On June 1, 2020, Tortice filed her Complaint, asserting claims against both Defendants under 42 U.S.C. § 1983 for: unlawful entry, unlawful search, excessive force, wrongful arrest, all in violation of the Fourth Amendment, and retaliation in violation of the First Amendment.  (ECF No. 1.)

On August 10, 2020, Taylor answered the Complaint.  (ECF No. 16.)  The same day, the Board filed the Motion, in which it argues that all of Tortice's *Monell* claims are based on conclusory allegations and asks the Court to dismiss those claims with prejudice.  (ECF No. 15 at 9.)  Tortice responded in opposition (ECF No. 23), and the

3

Board replied (ECF No. 24).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk*, 493 F.3d at 1177. Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v.*

4

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

Tortice asserts all of her § 1983 claims against both Taylor and the Board, though only the allegations against the Board are relevant for the purposes of this Motion.

Section 1983 imposes liability on

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983. The Supreme Court held in *Monell v. Department of Social Services* that "person," as used in this statute, includes "municipalities and other local government units," more specifically, "local government units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. 658, 691 & n.54 (1978).[3]

Tortice's allegations against Taylor are greatly troubling to the Court. But attaching liability to the Board for Taylor's actions is altogether a very different matter. A local government unit can be liable for damages under 42 U.S.C. § 1983 only when its

---

[3] The Eleventh Amendment reads, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court construes this language to mean, among other things, that states may not be sued (even by their own citizens) for money damages in federal court. *See Hans v. Louisiana*, 134 U.S. 1, 10–15 (1890).

"policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." *Id.* at 694. The Supreme Court has thus "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," thereby "ensur[ing] that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality," rather than holding the municipality liable simply because it employed a constitutional wrongdoer. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997).

> The relevant policy or custom can take several forms, including:
>
>> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted; alterations incorporated). But, whatever species of policy or custom is alleged,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

6

*Bryan County*, 520 U.S. at 404 (emphasis in original).

Here, Tortice has not identified a formal regulation or policy statement adopted by the Board which resulted in the alleged violations of her constitutional rights. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019) (noting in dicta that allegations—"that Denver has a custom, policy, or practice of tolerating and ratifying the use of excessive force"—failed to show "that Denver has a formal regulation or policy permitting the use of excessive force").  In addition, the Complaint does not allege a decision made by an individual who held final policymaking authority, or the ratification of a subordinate's decisions by such an individual.[4]  Thus, the Court discerns that the theories of municipal liability Tortice attempts to advance in the Complaint are: (1) failure to adequately train; and (2) widespread practice.

***Failure to Train*:**[5]  Under a failure to train claim, a plaintiff must ordinarily show a defendant had "actual or constructive notice that a particular omission in a [training] program caused official to violate citizens' constitutional rights" and nonetheless "made a conscious choice to retain [the] deficient training program."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  A plaintiff must prove that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of

---

[4] The Board points out that in her response brief, Tortice appears to be making a ratification argument that she did not allege in her Complaint.  (ECF No. 24 at 6 n.7.)  Because the Court agrees that the Complaint does not allege a ratification theory, the Court need not address such a theory.

[5] To the extent Tortice alleges theories of failure to supervise and/or discipline, those theories are encompassed by her failure to train theory.  *See Trujillo v. City & Cnty. of Denver*, 2017 WL 1364691, at *4 (D. Colo. Apr. 14, 2017) ("The latter theory (inadequate discipline/supervision) falls under the general rubric of 'failure to train.'"); *Estate of Reat v. Rodriguez*, 2014 WL 4358333, at *2 n.4 (D. Colo. Sept. 3, 2014) ("Allegations of inadequate discipline and/or supervision are treated as failures to train . . . .").

constitutional rights, that the policymakers of the city can reasonably said to have been deliberately indifferent to the need" for additional training. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *see Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006) (recognizing that claims for failure to supervise are treated under the same deliberate indifference standard).

Illustrative examples of Tortice's allegations of failure to train include, but are not limited to:

- Defendant Logan County failed to properly train, supervise, and discipline Defendant Taylor, despite the obvious need for scrutiny in specialized trainings, supervision, and discipline regarding decisions about searches, entries, and seizures, and the fact that its current custom, polices, an [*sic*]/or practices with respect to training, supervision, and discipline are clearly likely to result in a violation of constitutional rights. (¶ 60.)

- The Logan County Sheriff's Department response to these events evidences a pattern and practice of failing to discipline officers for constitutional violations. By failing to discipline Defendant Taylor for his unconstitutional and illegal conduct, Defendant Logan County approved his conduct, and effectively trained Taylor and other members of the Sheriff's Department that such conduct is consonant with official custom, policy and practice. (¶ 63.)

- Defendant Logan County's approval of Defendant Taylor's blatantly unconstitutional actions sends a clear and unequivocal message to its employees—it ***trains*** them—that such constitutional violations are acceptable, consistent with policy, and are approved practice, causing similar constitutional violations to be likely or even inevitable in the future. (¶ 64 (emphasis in original).)

These allegations, even taken as true, fail to state a failure to train theory of § 1983 liability against the Board under *Monell*. First, Tortice has made no specific allegations concerning the Board's police training program, inadequate or otherwise. *See Zartner v. City & Cnty. of Denver, Colo.*, 242 F. Supp. 3d 1168, 1173 (D. Colo. 2017) (dismissing a *Monell* claim for failure to train, in part, on that basis); *see also City*

8

*of Canton*, 489 U.S. at 390–91 ("In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Nor has Tortice set forth any facts regarding how Taylor was trained, who he was trained by, or why his training was deficient. *See Sanchez v. City of Littleton*, 2020 WL 5815913, at *11 (D. Colo. Sept. 30, 2020) (dismissing a *Monell* claim for failure to train and/or supervise on that basis); *Bark v. Chacon*, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011) (dismissing a municipal liability claim, where the plaintiff "generally allege[d]" that the individual defendants were not properly trained, but had not "allege[d] specific deficiencies in training and supervision, or explain[ed] how the incident described in the Amended Complaint could have been avoided with different or better training and supervision"); *Rehberg v. City of Pueblo*, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012) (dismissing a municipal liability claim, where the complaint did not allege specific facts concerning the officers' training, and did not identify individuals that allegedly failed to supervise or train).

Notably, the Complaint alleges no pre-existing pattern of violations. Although "a single incident of excessive force can establish the existence of an inadequate training program," there still must be sufficient factual allegations regarding "the program's inadequacy" to establish municipal liability. *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003). On these grounds, the Court finds that Tortice has not alleged a viable municipal liability claim for failure to train, supervise, or discipline.

***Widespread Practice*:** Given the conclusory nature of her allegations, it is unclear whether Tortice intends to allege a theory of widespread practice. To the extent she intends to do so, illustrative examples of Tortice's allegations of widespread practice include, but are not limited to:

- Defendant Taylor's conduct as described herein was engaged in pursuant to the training, customs, policies and practices of the Logan County Sheriff's Department. (¶ 59.)

- Such failure to properly train and supervise was the moving force behind and proximate cause of Defendant Taylor's unreasonable search of Ms. Tortice's home, and constitutes an unconstitutional policy, procedure, custom, and/or practice. (¶ 96.)

- Defendant Logan County has a custom, policy, or practice of tolerating violations of the First Amendment of the United States Constitution. (¶ 137.)

Even construed generously, the allegations of widespread practice in the Complaint are on their face insufficient. As these allegations demonstrate, the Complaint is devoid of facts concerning similar instances of First or Fourth Amendment violations committed by Taylor or any other officers of the Logan County Sherriff's Office. *See Waller*, 932 F.3d at 1290 ("Mr. Waller's allegations—describing only one similar incident of excessive force prior to his own injuries—fall far short of plausibly alleging a 'widespread practice' of excessive force[.]"). Given these critical deficiencies in her pleading, Tortice cannot presently proceed on this theory of municipal liability on this Complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Board's Motion to Dismiss (ECF No. 15) is GRANTED;

2. Tortice's municipal liability claims (Claims 1–5) against the Board are

DISMISSED without prejudice;

3. Should Tortice seek to amend her complaint, she may file a motion for leave to file an amended complaint by **no later than April 16, 2021**; and

4. By **March 24, 2021**, the parties shall contact the chambers of United States Magistrate Judge N. Reid Neureiter to set a status conference or such other proceeding as Judge Neureiter deems appropriate to move this action forward.

Dated this 22nd day of March, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge